Ladies and gentlemen, our first case for argument, Discount Inn v. Chicago, Ms. Yasharovitch. Good morning, Your Honors. If I can, first tell you thanks for the opportunity to present the oral arguments to this court. Could you speak up a little? I would like to thank you on behalf of the appellant and the counsels that worked in this brief for the opportunity to present our oral arguments. If I may begin? Sure. In this matter, the plaintiff challenged the amounts of the fines for the Chicago weeds ordinance and the Chicago fencing ordinance. The trial court, or the district court, conducted an analysis and found that the plaintiff's complaint was invalid pursuant to a 12B6 motion. However, we believe the court committed error in that finding for numerous reasons. The first reason is, it's clear that the Supreme Court has interpreted the excessive fines clause to apply to civil fines via the 14th Amendment due process clause. That would be done in Towers v. City of Chicago and the United States Supreme Court interpreted in Coopers Industries, Inc. v. Leatherman Tool Group, where the court specifically said the due process clause of the 14th Amendment to the federal Constitution imposes substantive limits on that discretion. That clause makes the 8th Amendment's prohibitions against excessive fines and cruel and unusual punishments applicable to the states. And the due process clause of its own force prohibits the states from imposing grossly excessive punishments on tort feasers. So with that, it's been said that the excessive fines analysis should proceed in two steps. The first step is to determine whether it's a punitive sanction, whether it's payment in cash or in kind as a punishment for some offense. And the second step that needs to be determined is whether the particular sanction in question is so large as to be excessive. And excessiveness is a factual issue appropriate for decision on a developed record. How can one decide whether anything is excessive? Putting to one side the question whether this clause even applies to the states, how can one decide whether something is excessive until some misconduct has occurred and a fine has been imposed? Suppose a criminal statute makes the maximum possible fine $26 trillion, but somebody then commits a violation and is fined $4.95. Has the Constitution been violated? No, Your Honor. But if the minimum fine was... Then why don't we need some concrete violation and some concrete sanction? Well, in some situations, the minimum guideline, for example, if the minimum sentence was death for speeding, surely we wouldn't need the sentence for death to challenge it on its face. Why wouldn't you? Well, because it's clear that the crime of speeding is not relative or proportional to the actual punishment of death. So you think if there's a mandatory punishment of death for killing a police officer, somebody who hasn't killed a police officer could sue and say, that violates the Eighth Amendment. I was contemplating killing a police officer, and I'm certainly more likely to do it if this penalty is set aside. So please help me increase my chance of killing a police officer. Well, no. Well, no. Well, there I agree with the panel there. And yes, there's no standing at that point to challenge. But standing is determined on whether there is what you would say a threat of enforcement or actual enforcement. And here they've been fined $1,200. There was 10 different cases where they, and they continue to get fined here. And what defense was made in that suit? That brings up the question why we don't have a race judicata defense here. There was no defense made. All right. So you could have made an excessive fine defense to the actual prosecution and didn't. The next question, my question, is why isn't that preclusive? That is not preclusive because it needs to be a finding on the merits. Furthermore, the court. No, no. The law in Illinois and in federal courts is that any argument you could have made, which you decide not to make, you can't separate out and bring in a separate lawsuit. I believe it was a default of a $1,200 judgment, and defaults are not considered. It doesn't make any difference. The fact that you choose not to defend your suit and a judgment is entered doesn't make any difference. The other issue is the administrative law courts are not capable and are bound by Illinois state law as not being able to determine questions of constitutionality. Why not? Do you think they don't take an oath to sustain the Constitution of the United States? No, that's the Illinois Supreme Court rules. Because they're not elected officials, the Illinois Supreme Court has held that they don't have the jurisdiction. Wait a minute. The Supremacy Clause says that the federal Constitution trumps state law for every state official. Correct. So you think that Illinois is just defying the Supremacy Clause or the federal Constitution? Gee, I believe so. Well, that was the problem because you can't have piecemeal litigation, and when you walk into an administrative law courtroom, you should have all your constitutional rights or be able to assert those defenses. However, here in the administrative law courts, you cannot do that, and the judges will not allow you to, nor can you develop a factual record there. Well, you might have had an interesting constitutional challenge to that. But, of course, by forfeiting, that's gone too. But proceeding with it, the second step requires factual analysis so that a mere allegation of excessiveness generally suffices to survive a 12b6 motion. And so although the district court properly subjected the fine here to the excessiveness review, it misapplied the inquiry or otherwise conducted no inquiry. Now, what are you complaining about? Is that this $1,200 fine? The $6,000 to $1,200 fine, the fact that there's no statute. And what's the problem with that? The problem with the $6,000 to $1,200 fine is that it's not proportionate to the seriousness of the offense. It's solely a revenue-generating mechanism. I don't understand that. I'm sorry. The offense is the weeds, right? Correct. Failing to cut your grass. All right. And they don't like the weeds, so they forbid the weeds and fine you. What would be? The fine has to be large enough to have a deterrent effect, right? So you don't want to have a $10 fine, a $5 fine. So how does one decide what is excessive? Well, there's numerous questions, and that was the issue here. The court chose to use factors that were used in criminal in rem forfeitures, where there were criminal activities conducted and other illegal activities relating to it. I don't understand. There are unlawful activities which are not criminal, you know, like a parking offense, and there's a fine. Right. Why is this fine excessive, disproportionate? Well, that's the question, and that's the actual issue in this case, because the court didn't have a sufficiently developed factual record to be able to determine whether it's excessive. What would make it excessive? I don't understand. You have these lots full of weeds, which are unsightly, and the city wants to prevent that, make you eliminate your weeds. So I don't know. Well, let's just say you have two weeds. If it's a $10 fine, you won't do anything, obviously. Well, the fines, some of the factors, and we think that the important factors would be to look at. What do you think would be a proper fine? One that's related to the cost? No, no, a number. What do you think would be a reasonable maximum fine for weeds? $150, anywhere from $100 to $200. And the reason being is because the Illinois State Noxious Weeds Act says for your first offense, it's $100, and for every offense thereafter, I believe it's $150 to $200. The federal constitution doesn't follow the Illinois Noxious Weeds Statute. It sounds now like you're making a state law argument that the city has exceeded its powers under Illinois law, but I can't imagine an argument saying the federal constitution follows the Illinois Noxious Weeds Statute. That's not what we're arguing. It was what you just argued. In answer to Judge Posner's question about what a reasonable fine would be, you said, well, here's the fine established by a state statute. You're making a constitutional argument here. Where is the constitutional limit as you see it? Is it set by state statute? Is it someplace else? No, it's in Cooper Industries Incorporated v. Leatherman Tool Group, which is a United States Supreme Court case. There they used in several cases, and there it used the sanctions in other cases for comparable misconduct. The growing of noxious weeds is also the growing of weeds, so it's a sanction comparable to other misconduct. And you have to look at other factors, such as the relationship between the penalty and the harm to the victim and the reprehensibility of the defendant's conduct or culpability and the defendant's ability to pay. So you want to bring any non-criminal state or local sanction within the realm of constitutional review? No. Only those that are punitive sanctions. Yes, I know. What about a parking violation? A parking violation is a punishment. Pardon? A parking violation is a punishment. It's not meant— Okay, so I got a $100 parking ticket for leaving my car in an alley. Now, do I have some—which I paid, of course. Could I have brought a constitutional case saying, oh, I just left the car in the alley, didn't block anything, you know? You could bring the case, and the analysis would be conducted on it, and most likely the analysis would say— Well, you completely flood the federal courts, right? Every time someone got a parking ticket, go running into court. It's unconstitutional. Right, it would open the floodgates to challenge every single thing, but the problem is the floodgates have to be opened some way for parties to challenge it. Yeah, but excessive—I mean, excessive. You still haven't given us a case that defines excessive in the context of this case. It seems to me that it has to be grossly disproportionate. It's pretty close to cruel and unusual punishment. Like, if the fine was, like, a minimum $6,000 and a maximum $10,000, we might be getting close to excessive punishment, but that's not what we have here. Right. Well, that's not what we have here because the improper factual analysis was conducted. The test is correct. Gross disproportionality is a test, and there's no rigid set of factors set out, either in Bajikasian or in any other case. In fact, it's left to the courts to do it on a case-by-case basis, which is why in Cooper's—the Cooper's industry case, which said that due process requires at least these three minimal factors to look at the reprehensibility of the defendant's conduct or culpability, the relationship between the penalty and the harm to the victim, and the sanctions in other cases, and addressing your point with a $6,000 to $12,000 fine. While a $6,000 to $12,000 fine may not be excessive for Warren Buffett or Bill Gates, it could be for a woman who has five kids and is a single mother and can't afford to pay the bills. Then she's stuck in perpetual servitude, and so that's the real question. Maybe $600 is something for one person, but it could be $1,200 or $600 could be affecting the livelihood. And when you look at the history— You realize that the framers of the Constitution were adherents of Blackstone, and Blackstone said that it is an essential element of justice that everybody be treated equally without regard to wealth. Correct. So your argument is that what Blackstone and the founders thought was an essential element of justice is now forbidden. No, my argument is that what Blackstone— That's the argument you just made. Well, the framers took expressly from the Magna Carta. They took the Magna Carta, which forbid amearsments and later reduced it. No, no, come on. Magna Carta is totally irrelevant. Magna Carta requires discrimination against Jewish merchants. It's not something you want to be selling. I understand. I agree with that, Your Honor. But what I'm saying is in the Magna Carta, they looked not only at the seriousness— The framers weren't following Magna Carta. They were following Blackstone and maybe Koch's institutes. If you want to go there, that might be helpful. But as I just said, Blackstone doesn't support your argument. Right. Is there something in Koch that does? No, but the English Bill of Rights does, which came from the Magna Carta. And so they took those steps and used it word for word. The Eighth Amendment did not come from the Magna Carta. It came from the Bill of Rights after the glorious revolution of 1689. If you're going to cite history, cite history correctly. Ferman v. Georgia in the United States Supreme Court said it came from the Magna Carta, then to the 18th— They were wrong. If you're going to cite history, cite history correctly. Our position is that the Eighth Amendment came to fruition from the Bill of Rights, which prior to that was the Magna Carta. There was an enlightenment or a spiritual revolution of restraining government. And here, basically, we're going to sum it up. The government can issue tickets whenever they want, arbitrarily discriminatory, no statute of limitations. You talk about gardening being protected by the First Amendment. Now, does that extend to the weeds? That is, if you just don't cut your weeds, are you— is that a First Amendment expression of free speech? It is in certain cases. Pardon? It can be in certain cases. How can that be? Because, for example, Kathy Cummings made a garden and won an award under the Daley administration for her garden in the annual Mayor's Landscaping— It was a weed law? Under the weeds law. And then when— Wait, these are—she just—she had weeds, and she got a prize for her weeds? No, she grew a natural native garden with native weeds because the Illinois state insect is the monarch butterfly, and its habitat is no weed. But I thought your client's weeds were just unkept weeds. Well, that's the problem. No one conducted analysis of how many weeds were there, what was the location, where did it occur, were there neighbors' complaints? I mean, obviously one could take something considered as weeds and plant them in some, you know, artistic pattern and spell out words and what have you. Is that what your client's weed lots are like? No. They're just weeds, right? No, we don't know. They're protected by the First Amendment? Your Honor, I ran out of time. Can I still answer? Hey, would you let—just answer my question. Sorry. So have you presented evidence that these weeds were artistically planned? No, and that's the whole problem. There wasn't a proper factual analysis conducted in the matter. They didn't look at the location. We were only in a notice-pleading state, and we satisfied that as a matter of law, it was a punitive punishment, so the first prong was satisfied. The second prong is where we would have gone into discovery— They're just weeds in lots, right? Right, but it could be— You're telling me that these are artistic expressions, that the client goes around and he creates weed lots that are beautiful? No. That's not what we're saying. What we're saying is that gardening is a constitutionally protected form of art, and if it's a facial challenge, you need to show that it affects that. If it's a facial challenge, you need to show that it cannot be valid in any conceivable application, and that one would think that whether or not it can be valid as applied to artistic expression, it can be valid as applied to weeds. Correct, but again, our position is there was no factual analysis conducted, and so the court, even in the record, does not know what the location was, where they were. Well, do you know? Well, I don't have them offhand. There was about 10 different violations. We continue to get violations. Have you seen any of these weeds? Yes. Are they beautiful? Some are. Because when we're talking about weeds, there's no definition of weeds, is what I'm saying. There's no definitions, and again, Your Honor, one man's vulgarity might be another man's lyric. So if one person finds something attractive, and that's the whole thing. And so our position is there was no factual analysis. There could have been two weeds that are 22 inches tall, which when you add up would be 12 inches above the thing, on a 2,000 square foot. You're just making the point that you can't bring this kind of claim in the abstract. You have to bring it as applied to particular sets of circumstances. Right. And we allege 10 particular sets of circumstances where they were brought, and the court dismissed it as a whole and never entertained the specific factual analysis that's required. And that's our whole problem. We don't know. There was supposed to be some factual analysis to look at. What are the enforcement costs to the city? What are their harms committed? What are the actual? That's what a legislative committee considers. It's not a constitutional argument. OK. Well, thank you very much, Mr. Usharovich. Mr. Byer? Thank you, Your Honor. Good morning, and may it please the court. This court should affirm the judgment of the district court. I'd like to direct my comments to the excessive fines challenge, the First Amendment challenge, and the vagueness challenge. Unless this court has any question on the procedural issues raised by the appellant, we'll just rest on our briefs for those. Starting with the excessive fines issue, Discount Inn's primary argument on appeal has been, as counsel repeated a number of times during its argument today, that a mere allegation of excessiveness is enough to survive a motion to dismiss. That's quite clearly not the law after Twombly and Iqbal. Under that understanding of the pleading requirements, a $1 fine could get past a motion to dismiss just by the plaintiff alleging that it's excessive. And that's just not enough. And because the appellant does not challenge the district court's specific analysis of the weed ordinance here, we believe that resolves this claim and that issue in its entirety. If this court has concerns, we also address that the Supreme Court has, as it recognized in McDonnell, has not yet incorporated the Eighth Amendment, the excessive fines clause of the Eighth Amendment against the states. And because, as this court discussed in its NRA decision, that, of course, led to McDonnell, that's just an issue for the Supreme Court, given its prior experience. Of course, the last time we said that, we weren't so successful. The city is well aware of that as well. But as this court recognizes, just regardless, at this stage, there's nothing this court can do to overrule a Supreme Court precedent. It's not that easily evaded is essentially the analysis in NRA. Turning to the First Amendment challenge to the weed ordinance, as this court noted, a typical facial challenge requires demonstration that the ordinance could not be valid in any possible circumstance. And that's clearly not the case here. An abandoned lot would certainly not, in any conception, involve protection. Well, suppose Andy Warhol came along and put a sign on the front of it and said, abandoned lot, signed Andy Warhol. Now art? I don't know if it would be art. I'm not sure I'm qualified to speak to that. But I do know the Supreme Court. Oh, there's a famous example of the Parisian urinal that was named The Fountain and was exhibited and is regarded as a major work of art. It could have been done by Jasper Johns. As I said, I'm definitely not an art expert, so I'll just take this court's word for that. But the problem is that we're not quarreling with the idea that there may be, in some conceivable circumstance, some weed that might be also art, that might also be art that's protected by the First Amendment. But that doesn't change the analysis here. That doesn't show that every possible application of the weed ordinance is invalid. And it certainly doesn't show over breadth that there are few outlier instances in which a weed might be considered art doesn't show that a First Amendment activity is being regulated, is being restricted relative to the weed ordinance's legitimate scope. In the run-of-the-mill case, as we explained in our brief, the weed ordinance covers those circumstances in which weeds are just left to run rampant, that it's a completely unmaintained lot, it's a lawn that hasn't been managed for some time. That's the average case that this ordinance addresses. And I have just kind of a practical question. Do owners get a separate notice and hearing for each violation, or could the first notice say lawn weeds have existed here for a month, so you're charged with 30 violations? How does it work practically? I'm not entirely familiar with that. What I've seen from my limited experience with the actual enforcement of the weed ordinance, which occurs through the city's Department of Administrative Hearings, is in this case, in particular, it was just a single violation. On this date, weeds were seen above a certain height. Typically, there'll be pictures of the lot, of the lawn, whatever the property at issue is. There'll be pictures that are attached, incorporated into the record, into the citation that are included. But other than that, I'm not that familiar with the inner workings of the Department of Administrative Hearings to speak responsibly on that. Jay Easterbrook raised a significant issue. I gave the example of the urinal, that's Duchamp. But it has not been uncommon for artists to simply attach a label to an entirely utilitarian object. And if it's a famous artist, then that counts as a work of art. So if the plaintiffs found a reputable artist willing to place a sign in each of his weed lots, couldn't that create problems for the city? I don't believe it would create a problem for the city. It may be one of those rare circumstances in which a weed could be considered art. Like I said, we're not going to quarrel with that. I don't think that we could responsibly quarrel with the thought that – I don't think anybody thought that burning a draft card would have been considered First Amendment activity until the context in which burning a draft card became a symbol of the anti-war movement came along. But at the same time, that doesn't – Actually, the Supreme Court held in O'Brien that could be regulated as long as it was without regard to the expressive content. Correct, correct. But my point was only – I don't see any claim here that weeds are being prosecuted only when they are signed by an artist. Oh, and that's certainly not the case. It's not the allegation here. And this ordinance would certainly pass the O'Brien test. It's regulation of weeds, of aesthetics, of air quality, of things of that sort are certainly within the city's power. It's inconceivable that the city would choose an attack on weeds as a manner to regulate First Amendment rights. It just seems incredibly bizarre if that were how the city were going about such regulation. So even if an O'Brien challenge were brought, this ordinance would certainly pass muster. I want to ask you about the dismissal of counts 4 through 7, where a discount made no argument. Can we affirm the waiver finding on the basis of page limits, even though the district court didn't say that was his reason? I think so. Discount in is – that was an issue raised in the district court, that was raised to the district court, and I believe that this court could affirm on that ground. It was properly raised. Discount in was already over the page limit, so nothing could have been added. It's not a circumstance where this court has to ask, could some of the – had some of the substance had been incorporated, would some have had to be left out? All of it would have had to be left out under the page limit requirement. And then could we affirm because the claims lack merit? Since the district court did not address that issue, I have not researched that issue. Because the district court decided on narrow grounds that it was waived, we just have not addressed that issue. I believe that the claims were without merit, but I do not want to speak one way out of risk of misrepresenting what those claims were and what the relevant analysis would be. It simply was not presented for purposes of this appeal. Discount in has made no argument that its claims would have moved forward absent the district court's waiver finding or abandonment finding might be more accurate. Finally, just on the vagueness issues regarding both the weed ordinance and the fencing ordinance, I'll start with the fencing ordinance. There's simply nothing vague about this ordinance. It quite clearly says any open lot in the city has to be surrounded by a fence, by a noncombustible fence. There's nothing vague there. Side lots are both defined in the municipal code. There's even a picture in the municipal code that shows exactly what a side lot is, what a side yard is. There's just no doubt there that what a side yard would be, so there's no conceivable vagueness problem there. As for the weed ordinance, manage and maintain are words that both have common understanding in the English language. A reasonable person could look at their project, look at their law, and look at their landscaping project and understand whether they could be considered to have abandoned their lawn, have abandoned their lot, abandoned their weeds. There's just no question here that a reasonable person or a reasonable inspector has sufficient guidelines to guide their discretion and their understanding of the ordinance. If this court has no further questions, we would respectfully ask that you affirm the judgment of the district court. Okay, thank you, Mr. Byer. Thank you, Mr. Byer. So, Mr. Roshar, your time has expired, but you can have another minute if you'd like. Yes, I would. Anything further? Very briefly. Just very briefly. The problem is that the city's complaining about weeds and dangers, but they take about four months to issue a notice and get someone into court. So if you're fined in January or you're fined, let's just say, in August when there's summer, you'll get the ticket in the winter. So it's not really that dangerous. They take no steps to abate it. They take no other steps. There's no statute of limitations, which means they can do whatever they please for as long as they please and gather these tickets. They're all conducted on hearsay. There's no actual stepping on the property to measure it. And with regard to whether the judge chose to allow the papers being over the page limits, in that case it's not clear whether the judge accepted them being over the page limits because he can waive the local rule requirements or whether he didn't. And so that's ambiguous. It seems that he entertained it, but he says we abandoned it by not responding, but he doesn't list why. And the other issue is that Kathy Cummings, and this is the most important part, had a garden that was given an award under the Daley administration, and she's a native gardener. Under the Rahm Emanuel administration, she was giving a ticket for the same garden. So clearly the definition of weeds and managing to maintain and the way it goes is subject to arbitrary and discriminatory enforcement. And the most important part is that these fines seem to have changed. Did she fight that? I'm sorry. She did, and she was convicted. She was assessed a $600 fine. And the article is attached in the reply. And the problem is that I think what we need to... I mean, did she argue that in light of her prize this was an artistic work? Yes. It's all in the reply brief, and it says that this was art, this was art, this was my garden, and she was still assessed because the guy said, it's a weed to me. And it was milkweeds. And so what we have is a serious problem, and I think it all came from the economic... It sounds like what we have is a basis for litigation in state court. That's why I'm just surprised. I don't see how it gives anybody else a right to litigate in federal court when all they have is weeds. Well, it was brought pursuant to 1983, Section 1983, which is a civil rights violation. And so when the states violate the civil rights or constitutional rights, Congress has created a vehicle to remove it from corrupt state courts because of the times during the civil rights movements and things like that where the state courts were not enforcing the constitutional rights. So this is our vehicle, whether it's corruption or discrimination or whatever reasons, this is the vehicle that was given to the people to get to the federal court, and there's nothing wrong with bringing it pursuant to an Eighth Amendment, Fourth Amendment, or whatever Second Amendment or First Amendment claims. If it's open to one amendment, it should be open to all. But the main thing to look at, and what is interesting, is that right around the economic downturn, the properties were being abandoned, and who would end up owning these properties? The banks. And so the banks weren't taking care of these properties, and they were leaned up. Now when the bank gets rid of these properties, the liens have to be paid. And you can see that the original fines were $100 to $300 as opposed to $600 to $1,200. I mean, we're talking $600 to $1,200 for not cutting your grass when you can drive and blow a red light and almost kill somebody, and you'll get a maximum $500 fine. I mean, this is a little bit out of hand. Okay, we'll have to terminate. Thank you. Well, we thank you, and we thank Mr. Byer for your arguments. So the next